Wright, J.,
delivered the opinion of the Court.
This is a bill seeking the specific performance- of a contract for the sale of a tract of land; or, if the defendant cannot make a valid title to the entire- tract, that complainant may have a decree for such portion of it as they may be enabled to make a title to, and compensation or abatement out of the purchase money as to the residue.
This land was purchased of defendants, William Smith and Jesse R. Linder, by one Davis, at the price of $425.00. To secure the payment of which,, he executed to them Ms four notes, payable at one, two, three and four years from their date; the second note being for $125.00, and the other three for $100.00 each. And they executed to him a bond, in which they became bound to make him a deed and title in fee simple, with covenants of general warranty, to the land, upon his payment of the purchase money.
*253 Afterwards, the complainant purchased this contract from Davis, took of him an assignment of the title bond, and became bound to pay defendants for the land, and executed his own notes to defendants; and Davis, with the assent of defendants, was let out of the contract altogether, and ceased to have any further interest in it.
The complainant has paid no part of the purchase money, except the first note, and this was paid partly in a note upon Kendall & Windle, for $99.80, due the 28th of September, 1856, which he assigned to defendants, waiving demand and notice, and upon which the sum of $15.80 had been paid, prior to the assignment, by the makers.
He seems to have withheld further payment until it was - ascertained if defendants co.uld make him a title to the land. And in the bill he prayed for and obtained an injunction to restrain the transfer of the notes until the title was settled.
At the time of filing the bill only one of the notes had matured, and the last one is yet to fall due.
This land once, belonged to George Linder, who died intestate, and it came by descent to his heirs at law, viz.; Sarah Smith, wife of defendant William Smith, Nancy Smith, and .defendant Jesse Linder, children of the intestate, who were of age; and also to the children and heirs at law of Milly Smith, .deceased, who was a daughter of the intestate, and who were infants and without guardians; and each of these heirs being the owner of a share -of one-fourth, as tenants ■ in common, the children of Milly Smith, in right of their mother, being also entitled to a share of one-fourth;
*254 A petition was filed in tbe County Court of Over-ton county by these heirs, for a sale of this land for partition. A decree was had, and the land sold by the clerk of that Court, on the 21st of December, 1854; and the same was purchased by the defendants, at the price of 311.50, which appears, at that time, to have been a fair price; and the title was decreed to them by the County Court. After this, they, claiming by this decree to be owners of the whole tract, sold the same to complainant in the manner hereinbefore stated.
The children of Milly Smith were not made defendants in the petition, but united with the adult heirs as complainants in praying for the sale. They filed the petition by the defendant, Jessé Linder, as their next friend. He was, at the time, their uncle and co-heir in the estate; and as before stated, with William Smith the husband of one of the adult heirs, became a purchaser of the land under the decree.
The complainant makes no question here as to the title of three-fourths of the land, to-wit, the shares of Sarah Smith, Nancy Smith, and Jesse Linder, and claims to have that much of the tract decreed him. The defendant, on the other hand, maintains that he is in a condition to make a title to the whole tract, and that if he cannot, complainant should have no part of it; but that the sale should be rescinded if it cannot be entirely executed.
The land has increased in value since the sale under the decree, and is now worth $630.00.
Upon these facts, we are of opinion that complainant is entitled to a decree for three-fourths of his land, *255 and that he is not bound to accept the title as to the other one-fourth.
It is settled as a general rule, that the purchaser, if he chooses, is entitled to hare the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase money, for any deficiency in the title of the estate. 2 Story’s Eq., sec. 779; Paton v. Rogers, 1 Ves. & B. R., 352.
As to the share or one-fourth belonging to the children of Milly Smith, it is not necessary for us to pronounce conclusively as to the effect of the decree upon their rights. It is enough for us to say, that this portion of defendant’s title is so doubtful, that complainant is not bound to accept it.
It is well settled, that a Court of Equity will not compel a purchaser to take a doubtful title. Sebring v. Mersereau, 9 Cowen, 344.
If the decree of the County Court be ever so regular, we apprehend that Jesse Linder, while holding the relation of next friend to these infants, could not, as against them, become the purchaser of their share in this estate, and hold it. Such a purchase would inure to their benefit, and create a trust in their favor, and it would be optionary with them to claim the estate from him, or any one holding under him, with notice of the trust.
If this, was a case under the Code of Tennessee, the purchase would be void, and the infants might bring ejectment.
In section 3839, a guardian or next friend, in any suit for the sale of a minor’s land, is prohibited from becoming a purchaser at the sale under the decree, or at any time *256 afterwards, until five years from the removal of the existing disabilities.
But we think, upon well established principles of equity existing in the common law, such a purchase would not be allowed to stand. It is an equitable maxim, that a trustee is disabled to purchase for his own benefit, at a sale of the trust property. The principle is, that a person assuming a fiduciary relation towards another in regard to property, is bound to exercise for the benefit of his cestui que trust all the rights, powers, knowledge, and advantages of every description, which he derives from that position, or acquires by means of it.
It was his duty, as the next friend -of these infants, to see that this property sold for the highest price; and his interest, as purchaser for himself, was to get it at the lowest.
These two relations were so essentially repugnant, that a Court of Chancery will never allow them to be united in the same person.
The principle is applied to any one who acts repre-sentatively, or whose office is to advise or operate, not for himself, but for others, and embraces administrators, executors., guardians, attorneys at law, general and special agents, assignees, commissioners, sheriffs, and all persons, judicial or private, ministerial or counselling, who, in any respect, have a concern in the sale of the property of others. It extends to sales by public auction, and to judicial sales, as well as to private ones: and embraces all eases wherever a confidence is permitted, a duty is assumed, or where one person is placed in such relation to another, by the act or consent of that other, or by *257 tbe act of a third person, or of the law, that he becomes interested for him in any subject of property or business; and hence he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interests he has become associated. Keech v. Sandford, and notes, Fox v. McKreth, and notes, Leading Cases in Equity, 47 to 58, 105 to 145.
And we are not sure but that these principles apply equally to the purchase of defendant, William Smith, so far as these minors are affected.
The Chancellor took this view of the case and we affirm his decree, with costs.
The complainant, so far as he has not done so, will be required to pay defendant three-fourths of the purchase money, including the note on Kendall & Wendle, with proper interest; and, upon doing so, will be entitled to a deed, with covenants of warranty, from the defendants, for three-fourths of the land. As to the share of one. fourth, belonging to Milly Smith’s children, the same will be restored to defendants; and if any account as to rents or improvements, as to that share, he necessary or desired, the same may be taken.
This cause is remanded to the Chancery Court at Livingston, to the end, that this decree may be executed.